NOT FOR PUBLICATION                                    (Doc. Nos. 34 & 48)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
C.G. & R.G. o/b/o C.B.G.,               :
                                        :        Civil No. 13–6278 (RBK/KMW)
                        Plaintiffs,     :
                                        :        **OPINION**
              v.                        :
                                        :
WINSLOW TOWNSHIP BOARD OF               :
EDUCATION                               :
                                        :
                        Defendant.      :
_____ :

**KUGLER**, United States District Judge:

       This action comes before the Court upon the cross-motions for summary judgment of

Defendant Winslow Township Board of Education (Doc. No. 34) and Plaintiffs C.G. and R.B.,

on behalf of their son C.B.G. (Doc. No. 48). Plaintiffs seek attorney's fees, expert fees, and

costs. For the following reasons, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN**

**PART** and Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** as to

attorney's fees. Plaintiffs' Motion is **GRANTED** and Defendant's Motion is **DENIED** as to

expert fees and costs.

## I.      BACKGROUND

       On November 26, 2012, Plaintiffs requested a due process hearing under the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, regarding the special

educational needs of C.B.G., their son. Def.'s Statement of Material Facts ("DSOMF") ¶ 7–8.

Plaintiffs sought a Section 504 Plan and/or an individualized education plan ("IEP") for their

son. *Id.* On December 21, 2012, the parties attended a resolution meeting, and Jamie Epstein, Esq. ("Mr. Epstein") represented Plaintiffs. *Id.* ¶ 10. At the meeting, Defendant proposed a Section 504 Plan for C.B.G., along with related services and a behavior reward system for sixty days. *Id.* ¶ 11. During that sixty days, Defendant would "complete a full set of evaluations to determine if C.B.G. would be eligible to receive special education and related services." *Id.* Defendant provided Mr. Epstein with the proposed Section 504 Plan and resolution agreement on January 15, 2013. *Id.* In response to Defendant's proposed Section 504 Plan, Mr. Epstein requested that the proposed accommodations be carried out through an IEP. *Id.* ¶ 12. Defendant agreed, but "requested the opportunity to do evaluations of C.B.G." *Id.* However, Plaintiffs did not accept Defendant's proposed Section 504 Plan, and instead proceeded with litigation. *Id.* ¶ 16.

On April 4, 2013, Plaintiffs moved for Judge John F. Russo to recuse himself, and the motion was subsequently denied. *Id.* ¶ 19. In May 2013, the parties entered into a consent order, partially resolving the dispute and implementing the Defendant's previously-proposed Section 504 Plan. *Id.* ¶ 23. On June 3, 2012, Judge Russo approved the partial settlement. *Id.* Judge Russo then conducted due process hearings on Plaintiffs' remaining claims, which were resolved by a settlement agreement on August 20, 2013. *Id.* ¶ 24–25. The settlement agreement did not resolve the parties' dispute over attorney's fees, experts' fees, and costs. *Id.* ¶ 27. Instead, it provided that Mr. Epstein would provide an invoice in support of the request for attorney's fees and costs, and that Plaintiffs "retained the right to seek fees and costs through the courts." *Id.*

Mr. Epstein provided Defendant with his "statement of fees and costs" on September 30, 2013, seeking $114,493.50 in attorney's fees, $4,226.00 in experts' fees, and $490.65 in costs. DSOMF ¶ 28–29. On October 15, 2013, Defendant informed Mr. Epstein that it would not pay

the demanded fees, "as the demand was excessive." *Id.* ¶ 33. This civil action ensued. Plaintiffs filed their Complaint on October 22, 2013, seeking attorney's fees and costs (Doc. No. 1).

On March 27, 2015, Defendant filed its Motion for Summary Judgment (Doc. No. 34). Defendant stipulated that Plaintiffs are the prevailing party, but argued that the relevant fees demanded by Plaintiff are unreasonable. *See* Def.'s Br. at 1, DSOMF ¶ 37. Plaintiffs filed their Cross-Motion for Summary Judgment (Doc. No. 48)[1] on May 11, 2015, seeking the following: 313.7 hours, or $156,850,[2] in attorney's fees; $4,226 in expert fees; and $1,330 in costs. Defendant opposed Plaintiffs' motion (Doc. No. 50), and Plaintiff filed a reply brief (Doc. No. 51).[3] The Court held a hearing on November 24, 2015 (Doc. No. 76), and the parties stipulated to a reasonable rate of $425 per hour for Mr. Epstein's services (Doc. No. 75). On November 28, 2015, Plaintiffs amended their bill, requesting the following: 357.2 hours, or $160,731,[4] in attorney's fees; $7,196 in expert fees; and $1,330 in costs (Doc. No. 77).

---

[1] Although Plaintiffs' motion is entitled "Motion for Fees and Costs" (Doc. No. 48), it is essentially a Rule 56 motion for summary judgment. Plaintiffs' claims are for reasonable attorney's fees and costs accrued during their due process petition before the New Jersey Office of Administrative Law and in their action before this Court. Plaintiffs ask this Court to enter judgment against the Defendant for these attorney's fees and costs, and thus for "judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

[2] In the May 11, 2015 Cross-Motion for Summary Judgment, Mr. Epstein bills 313.7 hours at $500 per hour, for an alleged $158,706. *See* Pls.' Mot., APX. I, at 46. However, 313.7 hours multiplied by $500 per hour is actually $156,850. The source of the additional $1,856 is unclear. Furthermore, 0.2 hours should be billed at the paralegal rate but was instead lumped into the attorney rate. *See* Pls.' Mot., APX I, at 44 (November 22, 2013 billing entry should be billed at the paralegal rate).

[3] Because these are cross-motions for summary judgment, Plaintiffs should not have filed a reply brief without leave of the Court. Loc. Civ. R. 7.1(h).

[4] Plaintiffs' amended bill requests 357.2 hours and $160,731 in attorney's fees. *See* Pls.' Am. Bill at 6 (Doc. No. 77). But 0.2 hours should be billed at the paralegal rate of $150 per hour, resulting in $30 in attorney's fees. The remaining 357 hours should be billed at the stipulated rate of $425 per hour, resulting in $151,725 in attorney's fees. The correct request is therefore $151,755. The Court is unsure how Plaintiffs calculated the attorney's fees at $160,731—mistakenly adding **$8,976** to the request for attorney's fees.

## II.      STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When parties file cross-motions for summary judgment, the court must apply the summary judgment standard to each party's motion individually. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

III.    **ATTORNEY'S FEES**

In a proceeding brought under the IDEA, a prevailing plaintiff may recover reasonable attorney's fees and costs related to the litigation. 20 U.S.C. § 1415(i)(3)(B)(i)(I). The district court "determine[s] what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption that the "lodestar" formula, which multiplies "the number of hours reasonably expended by a reasonable hourly rate[,]" yields a reasonable fee. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). *See also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The parties stipulate that $425 per hour is a reasonable hourly rate for Mr. Epstein's services in this case (Doc. No. 75), but the parties sharply dispute the reasonableness of the hours expended.

To calculate whether the hours expended by an attorney were reasonable, a court should review the attorney's bill and decide whether the time was reasonably expended, excluding those entries that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433. The party seeking attorney's fees must "include fairly definite information as to hours devoted to various general activities[.]" *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001). The court cannot "decrease a fee award based on facts not raised at all by the adverse party." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). For the court to decrease the hours claimed, there must be specific objections from the opposing party. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005). However, after the opposing party has made a specific objection, the burden is on the party seeking fees to justify the hours expended. *Id.* at 713. To determine whether the moving party has met its burden, the court must "go line, by line, by line through the billing records supporting the fee request." *Id.* (quotations omitted). The court "should reduce the hours claimed by the number of

hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." *Loughner*, 260 F.3d at 178.

### A.    Reasonable Hours Expended

Mr. Epstein originally billed 313.7 hours. *See* Pls.' Mot., APX I, at 41–46. Plaintiffs amended their request on July 1, July 16, September 29, October 10, and November 28, 2015. In the final amended bill, Mr. Epstein billed 357.2 hours. *See* Pls.' Am. Bill at 6 (Doc. No. 77).[5] The Court finds, for the reasons explained below, that Mr. Epstein reasonably expended 218.4 hours at the attorney rate and 10.7 hours at the paralegal rate.[6]

### 1.    Multi-Day Block Billing

Defendant specifically identified and objected to certain block billing entries that "span several days." *See id.* at 26–27. Plaintiffs therefore had notice that Defendant disputed these charges. *See Interfaith Cmty.*, 426 F.3d at 711. The Court must go line by line to determine whether Plaintiffs met their burden to justify the hours expended. *Id.* at 713.

From April 24, 2013 to April 26, 2013, Mr. Epstein billed 19 hours for "PREP, TRAVEL, ATTEND OAL HEARING[.]" Pls.' Mot., APX I, at 43. The hearing was held before Judge Russo, at the New Jersey Office of Administrative Law ("OAL"). Under his costs, Mr. Epstein billed 64 miles per round trip for travel to the OAL. *See id.* at 45. The Court finds that reasonable travel time is 1.5 hours roundtrip per OAL appearance. If Mr. Epstein spent 1.5 hours for travel, then according to his bill he spent 17.5 hours preparing for and attending the due process hearing on April 26, 2015. In contrast, Defendant's counsel Ms. Cherie Adams billed

---

[5] Although lumped into the attorney rate, 0.2 hours should be billed at the paralegal rate. *See* Pls.' Mot., APX I, at 44 (November 22, 2013 billing entry is billed at the paralegal rate).
[6] Please see the Court's calculations in the appendix.

9.80 hours. *See id.*, APX II, at 80. Mr. Epstein and Ms. Adams attended the same due process

hearing, and there is no justification for this disparity in billing. Ms. Adams billed at a rate of

$135.00 per hour, whereas Mr. Epstein's stipulated reasonable hourly rate is $425 per hour—

more than three times the rate of Ms. Adams. As rates increase, the reasonable time expended for

the same matter decreases. Furthermore, according to Mr. Epstein, he specializes in education

law. His specialization and experience should decrease, not increase, the time necessary to

prepare for a routine due process hearing. *See Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583,

596 (3d Cir. 2000) ("with experience, the amount of time spent performing routine tasks in an

area of one's expertise should decrease[]"). The Court finds that, for the OAL hearing on April

26, 2013, Mr. Epstein reasonably expended 1.5 hours for travel and 9 hours for preparation and

attendance—a total of 10.5 hours.

From July 10, 2013 to July 12, 2013, Mr. Epstein billed 17.3 hours for "PREP, TRAVEL,

ATTEND OAL HEARING[.]" *See* Pls.' Mot., APX I, at 43. Ms. Adams spent .1 hour preparing

a file and 9.7 hours preparing for and attending the same due process hearing. *See id.*, APX II, at

85. Defendant's counsel Ms. Audra Pondish billed 8 hours, at $125 per hour, to attend the same

hearing. *See id.* at 74. Again, Mr. Epstein is specialized and experienced in education law. The

Court finds that Mr. Epstein reasonably spent 1.5 hours traveling to and 9 hours preparing for

and attending the OAL hearing on July 12, 2013—a total of 10.50 hours.

From July 29, 2013 to August 1, 2013, Mr. Epstein billed 18.1 hours for "PREP,

TRAVEL, ATTEND OAL HEARING[.]" *See id.*, APX I, at 43. Ms. Adams billed 9.60 hours (9

hours and 36 minutes) for that same due process hearing. *See id.*, APX II, at 86. The Court finds

that Mr. Epstein reasonably spent 1.5 hours traveling to and 9 hours preparing for and attending

this due process hearing—a total of 10.50 hours.

From August 5, 2013 to August 7, 2013, Mr. Epstein billed 17.9 hours for "PREP, TRAVEL, ATTEND OAL HEARING[.]" *See id.*, APX I, at 43. Ms. Adams spent 8.70 hours (8 hours and 42 minutes) to prepare for and conduct that same hearing. *See id.*, APX II, at 86. Given Mr. Epstein's specialization and experience, the Court finds that Mr. Epstein reasonably spent 1.5 hours traveling to and 8 hours preparing for and attending this due process hearing—a total of 9.50 hours.

From August 18, 2013 to August 20, 2013, Mr. Epstein billed 16.9 hours for "PREP, TRAVEL, ATTEND OAL HEARING[.]" *See id.*, APX I, at 43. Ms. Adams billed 7.40 hours (7 hours and 24 minutes) for the same due process hearing. Again, given the disparity in Mr. Epstein and Ms. Adams's billing rates, Mr. Epstein should spend less time, not more, preparing for the same hearing. The Court finds that Mr. Epstein reasonably spent 1.5 hours traveling to and 7 hours preparing for and attending this due process hearing—a total of 8.5 hours.

From September 13, 2013 to September 19, 2013, Mr. Epstein billed 0.7 hours for "COMMUNICATIONS WITH JERRY TANNENBAUM, ESQ[.]" *See id.*, APX I, at 43. Mr. Tannenbaum's affidavit was attached to Mr. Epstein's September 30, 2013 fee demand, although his affidavit was not attached to Mr. Epstein's Motion. The Court disallows this billing of 0.7 hours as unnecessary because Defendant did not ask for affidavits regarding Mr. Epstein's rate, and Mr. Tannenbaum's affidavit was not used in Plaintiff's Motion before this Court.

From September 13, 2013 to September 23, 2013, Mr. Epstein billed 0.5 hours for "COMMUNICATIONS WITH GEORGE HOLLAND ESQ[.]" *See id.*, APX I, at 43. Mr. Epstein used Mr. Holland's affidavit in his fee petition. The Court finds that this billing entry was reasonable. From September 13, 2013 to September 23, 2013, a span of 11 days, Mr. Epstein billed 4.9 hours (4 hours and 54 minutes) for "COMMUNICATIONS WITH STACI

GREENWALD, ESQ[.]" *See id.* at 43. Ms. Greenwald provided an affidavit for Mr. Epstein for

his September 30, 2013 fee demand. It was unnecessary for Mr. Epstein to spend 4.9 hours over

11 days communicating with Ms. Greenwald regarding a 7-page affidavit, especially because

Ms. Greenwald provided a similar affidavit in support of Mr. Epstein in 2011 for another case in

the District of New Jersey. Greenwald Aff. ¶ 10–11. The Court finds that Mr. Epstein reasonably

spent 0.5 hours communicating with Ms. Greenwald—the amount of time Mr. Epstein billed for

communications with Mr. Holland.

### 2.   Emails

Defendant objected to Mr. Epstein's billing entries for drafting and reviewing emails.

Def.'s Opp'n. Br. at 28. Mr. Epstein billed 0.05 hours, or 3 minutes, per email. *See* Pls.' Mot.,

APX I, at 43, 45. Mr. Epstein billed 29.5 hours for drafting and reviewing 590 emails from May

1, 2012 to October 22, 2013. He billed an additional 16.5 hours for drafting and reviewing 329

emails from October 22, 2013 to May 11, 2015. On July 1, 2015, Mr. Epstein withdrew 53

emails in a letter to Magistrate Judge Williams (Doc. No. 55). Defendant objected that Plaintiffs

accounted only for 845 emails and that Mr. Epstein double billed for ECF filings (Doc. No. 56).

Mr. Epstein then withdrew the time expended for 60 ECF emails. (Doc. No. 57).

Mr. Epstein provided this Court with an amended bill on November 28, 2015 (Doc. No.

77). Mr. Epstein ignored his previous reductions. He again billed 29.5 hours for 590 emails from

May 1, 2012 to October 22, 2013 and 16.5 hours for 329 emails from October 22, 2013 to April

24, 2015. He added another 10 hours for 201 emails from April 24, 2015 to November 27, 2015.

Mr. Epstein inadequately documented the hours he billed for emails. *See Loughner*, 260

F.3d at 178. Many emails are described simply as "MESSAGE READ RECEIPT"—but it should

have taken Mr. Epstein seconds, not 3 minutes, to open such emails and see that his emails were

received. Many other emails, if not most, are subsumed within Mr. Epstein's other billing entries. For example, he billed 12 emails, or 36 minutes, for emails with George Holland, although he had already billed 30 minutes for communications with George Holland. *See* Mr. Epstein's July 1, 2015 Letter, Email Bill at 8. Furthermore, he does not explain how time billed for emails regarding scheduling is separate from time billed for preparing and attending hearings. Because Mr. Epstein inadequately documented his time billed to emails, the Court cannot determine the extent to which Mr. Epstein's email billing entries are reasonable. The Court therefore disallows the 56 hours Mr. Epstein billed for reviewing and drafting emails.

### 3.    Vague Entries

Defendant objected to certain billing entries as vague and excessive. *See* Def.'s Opp'n. Br. at 26 & n.10. The Court, however, finds that the descriptions for these entries are sufficient to evaluate their reasonableness. Many of the entries are reasonable as compared to the time expended by Ms. Adams and/or Ms. Pondish, or there is no basis upon which the Court may reduce the hours. Ms. Adams and Ms. Pondish's billing records beyond August of 2013 are not before the Court, so the Court does not have a non-arbitrary method to determine the reasonable hours Mr. Epstein spent attending in-person and telephone conferences with Judge Williams.

On March 20, 2013, Mr. Epstein billed 2.0 hours for "PREP, ATTEND OAL CONF CALL[.]" *See* Pls.' Mot., APX I, at 43. Ms. Pondish billed 0.80 hours, at $140 per hour, for the same conference call with Judge Russo. *See id.*, APX II, at 22. The Court finds that Mr. Epstein reasonably expended 0.8 hours for this conference call. On June 3, 2013, Mr. Epstein billed 2.0 hours for "PREP, ATTEND OAL CONF CALL[.]" *See id.*, APX I, at 43. Ms. Pondish billed 0.60 hours, at $125 per hour, for this same conference call with Judge Russo. *See id.*, APX II, at

55, 72. Ms. Adams billed 0.4 hours, at $135 per hour, for the same call. *See id.* at 84. The Court finds that Mr. Epstein reasonably expended 0.5 hours for this conference call.

### 4.    Fee Litigation

From September 20, 2013 to September 29, 2013, a span of 10 days, Mr. Epstein billed 3.7 hours for "DRAFT FEE PETITION[.]" *See* Pls.' Mot., APX I, at 43. Mr. Epstein is very experienced with fee litigation, and he should have used a previous affidavit as a template. Furthermore, Mr. Epstein should have billed the time spent attaching the exhibits to the letter at the paralegal rate, not at the attorney rate.[7] Given Mr. Epstein's extensive experience in drafting fee petitions, and that his September 30, 2013 letter to Defendant was less than 2 pages long, excluding the attached exhibits, *see* Defs.' Opp'n. Br., Exh.17, the Court finds that Mr. Epstein reasonably spent 1 hour at the attorney rate to draft the letter and update his affidavit, and another 2 hours at the paralegal rate to attach the exhibits to the letter.

On September 18, 2013, Mr. Epstein billed 4.1 hours for "FILE, WINSLOW ATTY BILL REVIEW, DRAFT FEE PETITION." *See* Pls.' Mot., APX I, at 43. The Court has already accounted for the time Mr. Epstein reasonably expended to draft the 2-page letter. Mr. Epstein reasonably spent 1 hour reviewing Defendant's attorney bills, and he should have billed any filing at the paralegal rate. The Court therefore reduces this billing entry to 1 hour at the attorney rate and 1 hour at the paralegal rate.

On October 22, 2013, Mr. Epstein billed 5.7 hours for "DRAFT COMPLAINT[.]" Pls.' Mot., APX I, at 44. The Complaint is 12 pages long, with 14 pages of exhibits attached. Mr. Epstein is experienced in filing fee applications, and he should have billed any time spent

---

[7] "Paralegal work, if performed by an attorney, can be billed only at paralegal rates." *T.B. v. Mount Laurel Bd. of Education*, Civ. No. 09–4780, 2012 WL 1079088, at *4 (D.N.J. Mar. 30, 2012.

attaching exhibits to the Complaint at the paralegal rate. Given Mr. Epstein's experience, and the relative simplicity of the October 22, 2013 Complaint, it was not reasonable for him to bill nearly 30 minutes per page to draft the Complaint. The Court finds that Mr. Epstein reasonably spent 4 hours to draft the Complaint. The Court will further award Plaintiffs 2 hours at the paralegal rate for time spent attaching exhibits.

Defendant objected to the hours Mr. Epstein spent on "unnecessary discovery as to the issue of whether the District unreasonably protracted the litigation based on the date that the District received the due process petition." *See* Def.'s Opp'n. Br. at 31. These objections encompass another 6.9 hours of Mr. Epstein's bill. The bulk of the objected hours was dedicated to preparing for, travelling to, and attending a deposition. Defendant argued that Mr. Epstein unreasonably protracted the litigation. Mr. Epstein seemingly conducted the deposition to find evidence suggesting instead that Defendant unreasonably protracted the litigation. Because the deposition could have produced relevant information, the Court finds that Mr. Epstein reasonably expended these 6.9 hours.

Defendant also objected to Mr. Epstein billing another 0.3 hours for communications with Greenwald on January 29, 2015 and another 0.4 hours for communications with Holland on February 6, 2015. *See* Def.'s Opp'n. Br. at 33. The affidavits attached to Mr. Epstein's summary judgment motion are very similar to those attached to Mr. Epstein's September 30, 2013 invoice to Defendant. Furthermore, Defendant did not require affidavits for the September 30, 2013 invoice, so the duplicative communications were unnecessary. The Court finds that the 0.7 hours spent on these two billing entries was not reasonable.

### 5.  Paralegal Work

If an attorney performs paralegal work, he must bill those hours only at paralegal rates. *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992). If the attorney improperly bills paralegal work at attorney hours, the district court must reduce the compensation awarded for that work to the market rate for paralegals. *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) ("permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes").

Mr. Epstein asserted that no paralegals worked on the underlying due process case, and that he billed tasks that could have been performed by a paralegal at $150 per hour. Epstein Aff. ¶ 34. But Mr. Epstein billed only one entry at the paralegal rate, and he still mistakenly charged $425 per hour for that billing entry. *See* Pls.' Am. Bill at 4 (Doc. No. 77) (Column 170 is marked "PARALEGAL RATE" but Mr. Epstein bills the 0.2 hours at $425 per hour for $85, instead of at $150 per hour for $30). Defendant specifically objected that certain billing entries should have been billed at the paralegal rate, at least in part. *See* Def.'s Opp'n. Br. at 21. Mr. Epstein responded to these objections in his reply brief, largely by pointing to billing entries by Ms. Adams and Ms. Pondish. *See* Pls.' Reply Br. at 8. However, Mr. Epstein failed to acknowledge that Ms. Adams and Ms. Pondish charged $135 per hour and $140 per hour respectively—less than Mr. Epstein's purported $150 per hour paralegal rate. Furthermore, Ms. Adams's firm charged $55 per hour, their paralegal rate, for a significant number of billing entries. *See, e.g.*, Pls.' Mot., APX II, at 79 (1.40 hours at $55 per hour for "[c]ompile and review exhibits for hearing").

Defendant's objections on this basis collectively encompass 5.5 hours of time billed at Mr. Epstein's attorney rate. The Court will compensate these hours at the paralegal rate, not at Mr. Epstein's attorney rate. Paralegals can perform tasks such as reviewing notices and transmittal letters and compiling exhibits—such work need not be done by an attorney with a stipulated hourly rate of $425 per hour. Furthermore, although Mr. Epstein can bill telephone conferences at an attorney rate, he block billed those conferences with reviewing a fax and filing a petition. Because the Court cannot determine what portion of that 1.1 hours can truly be attributed to the telephone conferences, the entire billing entry will be reduced to the paralegal rate. Finally, given that Mr. Epstein billed 357 hours at the attorney rate, it is very likely that more than 5.5 hours should be reduced to the paralegal rate—however, Defendant only objected specifically to these entries totaling 5.5 hours, and the Court is therefore limited to this reduction.

### 6.     Unrelated Matters

Defendant objected to the hours Mr. Epstein expended for a request under the Open Public Records Act ("OPRA"). *See* Def.'s Opp'n. Br. at 35–36. These billing entries encompass another 3.5 hours. The records Mr. Epstein received from his OPRA requests seem irrelevant to the underlying substantive action but relevant to this fee litigation. Had Mr. Epstein waited for discovery before this Court, it would have been unnecessary for him to make an OPRA request. Defendant had in its possession the records related to Dr. Tighe, the October 28, 2012 email petition, Defendant's payments for CBG's services, and Defendant's attorney bills. If these records were relevant, Defendant would have produced them in discovery. The Court therefore allows the 0.7 hours Mr. Epstein spent reviewing the records, but disallows as unnecessary the 2.8 hours Mr. Epstein billed for drafting and amending the OPRA requests.

Defendant also objected to the "fees and expenses for work rendered on the underlying special education matter after Judge Russo issued his final decision on September 9, 2013 and unrelated to the attorney's fees action[.]" *See* Def.'s Opp'n. Br. at 36–37. Because "work expended after the sole source of success was achieved . . . cannot be thought of as having contributed to that success[,]" the Court will disallow such billing entries. *See A.V. v. Burlington Twp. Bd. of Educ.*, Civ. No. 06–1534, 2008 WL 4126254, at *6 (D.N.J. Sept. 3, 2008). The Court has already addressed the billing entries related to the September 30, 2013 invoice. The remaining billing entries encompass 0.9 hours and occurred after the final substantive settlement. As such, the Court disallows those 0.9 hours.

### 7.  Unsuccessful Claims

"[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved[.]" *Hensley*, 461 U.S. at 435. Defendant objected to the hours expended on the unsuccessful motion for Judge Russo to recuse himself. *See* Def.'s Opp'n. Br. at 38. On April 9, 2013, Mr. Epstein billed 3.9 hours to draft the recusal motion. *See* Pls.' Mot., APX I, at 41. On April 22, 2013, Mr. Epstein billed 0.2 hours to review the recusal decision. *See id.* at 42. Defendant also asserted that "time was spent during oral argument on April 4 and 26 addressing this issue" but did not specify the time expended. *See* Def.'s Opp'n. Br. at 38. Given that both Judge Russo and another ALJ denied the motion to recuse Judge Russo, Plaintiffs were unsuccessful in this matter and the time expended was unnecessary. However, because Defendant did not specify how much time was spent on the recusal motion during the hearings, the Court has no non-arbitrary basis to reduce those hours. The Court therefore reduces Mr. Epstein's bill by 4.1 hours to disallow the time spent drafting the recusal motion and reviewing the resulting decision.

Mr. Epstein appealed Magistrate Judge Williams's Order that denied him the opportunity to video record the depositions personally (Doc. No. 30). On June 17, 2015, this Court affirmed Judge Williams's Order (Doc. Nos. 53 and 54). As Mr. Epstein was wholly unsuccessful in his appeal, and the subject matter of the appeal was inconsequential to the outcome of the fee litigation, the Court disallows any attorney's fees regarding the appeal. The Court therefore reduces Mr. Epstein's total bill by an additional 13.6 hours.

### B.      Lodestar Calculation

There is "[a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee[.]" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Mr. Epstein reasonably expended 218.4 hours at a stipulated reasonable attorney rate of $425 per hour, yielding $92,820 in fees. He also reasonably expended 10.7 hours at the undisputed paralegal rate of $150 per hour, resulting in $1,605 in fees. The lodestar is therefore $94,425.

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. The Court has discretion to "identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success." *Id.* at 436–37.  Plaintiffs admitted that, under the final settlement, Defendant provided C.G.B. with the initial 504 Plan and IEP that Defendant offered in January 2013. *See* Pls.' Br. at 1. However, pursuant to the final settlement, Defendant also provided Plaintiffs with payment for and transportation to the Yale School—Medford for C.B.G., payment for private evaluations, and reimbursement of $3,000 for prior private evaluations. *See id.*; Def.'s Opp'n. Br., Exh. 16 (Doc. No. 50–3 at 100–02). Unlike the January 2013 offer, the final settlement also expressly

reserved Plaintiffs right to seek attorney's fees, expert's fees, and costs. *See* Def.'s Opp'n. Br., Exh. 16 ¶ 7 (Doc. No. 50–3 at 102).

Given that the final settlement terms were more favorable to Plaintiffs than the January 2013 offer, the Court declines to adjust the lodestar downward for limited success. The private school placement, payment for future evaluations, reimbursement of prior evaluations, and right to seek fees and costs were substantial benefits which justified the rejection of the January 2013 offer and the subsequent litigation.

Defendant also argued that the Court should adjust the lodestar downward because Plaintiffs "unnecessarily prolonged litigation in this matter due to the filing of unnecessary motions and the refusal to comply with mandatory discovery rules[.]" *See* Def.'s Opp'n. Br. at 12. However, the Court already addressed Defendant's specific objections and determined the reasonable hours expended in the underlying substantive matter. If Defendant had additional objections, it should have specified which billing entries were unnecessary or duplicative, and why. The lodestar is presumably reasonable, and the Court declines to adjust it downward for objections that should have been raised elsewhere.

### C.    Shocks the Conscience

"If, after following the proper procedures, the Court remains convinced that Epstein's hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all." *M.G. v. Eastern Regional High School Dist.*, 386 Fed. Appx. 186, 189 (3d Cir. 2010). A Court may entirely deny attorney's fees under the IDEA and the Rehabilitation Act where the fee requested is so "grossly exaggerated or absurd," *Hall v. Borough of Roselle*, 747 F.2d 838, 842 (3d Cir. 1984), that the request "shocks the conscience of the court." *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d

92, 97 (4th Cir. 1993). Considerations in this analysis include whether counsel acted with sufficient integrity in submitting the request to the court, *see Hall*, 747 F.2d at 842, and whether counsel engaged in inappropriate reaching for excessive fees. *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991).

Mr. Epstein engaged in inappropriate reaching for excessive fees in this case. His November 28, 2015 amended bill requested $160,731 in attorney's fees. *See* Pls.' Am. Bill at 6. Yet the lodestar fee is $94,425—just 59 percent of Mr. Epstein's request. He reasonably expended 218.4 hours, or 61 percent, of the 357 hours he billed at the attorney rate. This Court has previously discussed Mr. Epstein's history of egregious conduct in fee requests in the District of New Jersey. *See M.G. v. Eastern Regional Sch. Dist.*, Civ. No. 08–4019, 2009 WL 3489358, at *6–*9 (D.N.J. Oct. 21, 2009). He has a history of grossly overstating his fees. *See L.J. v. Audubon Bd. of Educ.*, Civ. No. 06–5350, 2009 WL 995458, at *18 (D.N.J. Apr. 13, 2009) (awarding Mr. Epstein just 46 percent of the amount originally requested); *P.N. v. Clementon Bd. of Educ.*, Civ. No. 02–1351, 2007 WL 1186552, at *13 (D.N.J. Apr. 20, 2007) (awarding Mr. Epstein just 67 percent of the amount originally requested); *Deptford Twp. Sch. Dist. v. H.B. (Deptford II)*, Civ. No. 01–0784, 2006 WL 3779820, at *8, *10 (D.N.J. Dec. 21, 2006) (awarding Mr. Epstein just 38 percent of the amount he originally requested).

"Considered together, the inaccuracies and exaggerations that plague Epstein's fee request" suggest "that his submission constituted an improper attempt to maximize his fee award, as opposed to a good-faith representation of his billing rate and the hours he reasonably expended[.]" *M.G.*, 386 Fed. Appx. at 189. Mr. Epstein improperly billed 138.6 hours, inflating his bill by $58,905 at the $425 hourly rate to which the parties stipulated. As in *M.G.*, "the hours Epstein billed were not only excessive, but also either grossly negligent or fraudulent." *Id.* at

188–89. Furthermore, his inaccuracies consistently result in his benefit. For example, Mr. Epstein requested $160,731 in attorney's fees in his November 28, 2015 amended fee request— $8,976 more than he should have. He billed 357.2 hours, with 0.2 hours at the paralegal rate. At the stipulated attorney rate of $425 per hour, he should have requested a lodestar of $151,755. Mr. Epstein was *at least* grossly negligent when he inexplicably billed an additional $8,976.

Mr. Epstein's amended fee request also failed to reflect that he withdrew the time billed for 113 emails (Doc. Nos. 55 and 57). Mr. Epstein billed 3 minutes per email, so this error resulted in 5.65 hours added to his bill. He therefore requested that this Court award him $2401.25 in fees for billing entries he had previously withdrawn.

In addition, Mr. Epstein asserted that he did not use any paralegals in this case, and yet only one billing entry, on November 22, 2013, is marked at the paralegal rate. Although this billing entry was marked at the paralegal rate, Mr. Epstein still billed the time at the attorney rate of $425 per hour, not at the paralegal rate of $150 per hour.

Given Mr. Epstein's history of grossly inflating fees in this Court, his excessive billing to the tune of 138.6 hours and $58,905 in this case, and the carelessness (at best) with which Mr. Epstein drafted his fee request, Mr. Epstein's inappropriate reaching for fees shocks the conscience of the Court. The Court therefore exercises its discretion to reduce the lodestar by 50 percent, to $47,212.50.

## IV.  EXPERT FEES AND COSTS

Plaintiffs' Motion for $7,196 in expert fees and $1,330 in costs is **GRANTED** and Defendant's Motion to reduce Plaintiffs' award of expert fees and costs is **DENIED**. As to costs, Defendant's only objections were to the cost of the deposition transcript and travel costs related to Mr. Epstein's discovery request into the October 28, 2012 email petition. *See* Def.'s Opp'n.

Br. at 32. Because Mr. Epstein's discovery requests and depositions may have produced information relevant to analyzing adjustments to the lodestar, the Court will not reduce Plaintiffs' costs.

A prevailing party under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, is entitled to expert fees. *L.T. v. Mansfield Twp. Sch. Dist.*, Civ. No. 04–1381, 2009 WL 2488181, at *2 (D.N.J. Aug. 11, 2009). Defendant objected that "Plaintiffs specifically waived their right to recovery of expert fees in resolving their Section 504 claims in the consent order approved by Judge Russo on June 3, 2013." Def.'s Opp'n. Br. at 34–35. That consent order stated that "[s]pecifically, the parties have settled the petitioners' prospective claim for a 504 Plan only." *Id.*, Exh. 14 (Doc. No. 50–3 at 82–83). The consent order did not specifically address fees or costs. The final settlement agreement, however, stated that "[p]arents specifically retain the right to seek reimbursement for attorney's and expert's fees and expenses under IDEA and § 504." *See id.*, Exh. 16 ¶ 7 (Doc. No. 50–3 at 102). As such, Plaintiffs are entitled to reimbursement of their expert fees pursuant to Section 504.

Section 504 allows the prevailing party to recover for consulting expert fees. *See Neena v. Sch. Dist. of Philadelphia*, Civ. No. 05–5404, 2009 WL 2245066, at *11 (E.D. Pa. July 27, 2009) (holding that plaintiff was entitled under Section 504 to reimbursement for expert evaluation). Although Plaintiffs did not disclose Dr. Margolis and Ms. Michaels in the underlying due process hearing, these experts were consulting experts and Plaintiffs are entitled to reimbursement for the $2,986 paid to Dr. Margolis and the $90 paid to Ms. Michaels. Plaintiffs are also entitled to reimbursement for the $2,970 paid to John Corchnoy, Esq. Defendant did not have any specific objection to the award of expert fees for Dr. Leetch in the amount of $1,150.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** as to attorney's fees. Plaintiffs are entitled to $47,212.50 in attorney's fees. Plaintiffs' Motion for $7,196 in expert fees and $1,330 in costs is **GRANTED**, and Defendant's Motion is **DENIED** as to expert fees and costs.


Dated:    12/01/2015                                    s/ Robert B. Kugler

                                                        ROBERT B. KUGLER

                                                        United States District Judge

## VI.    APPENDIX

| Date | Reason for Change | Original Bill | Reasonable Hours | Reduction in Attorney Hours | Paralegal Hours |
|---|---|---|---|---|---|
| 4/24/2013 | Block Billing | 19 | 10.5 | 8.5 | 0 |
| 7/10/2013 | Block Billing | 17.3 | 10.5 | 6.8 | 0 |
| 7/29/2013 | Block Billing | 18.1 | 10.5 | 7.6 | 0 |
| 8/5/2013 | Block Billing | 17.9 | 9.5 | 8.4 | 0 |
| 8/18/2013 | Block Billing | 16.9 | 8.5 | 8.4 | 0 |
| 9/13/2013 | Block Billing | 0.7 | 0 | 0.7 | 0 |
| 9/13/2013 | Block Billing | 4.9 | 0.5 | 4.4 | 0 |
| 5/1/2012 | Emails | 29.5 | 0 | 29.5 | 0 |
| 10/22/2013 | Emails | 16.5 | 0 | 16.5 | 0 |
| 4/24/2015 | Emails | 10 | 0 | 10 | 0 |
| 3/20/2013 | Vagueness | 2 | 0.8 | 1.2 | 0 |
| 6/3/2013 | Vagueness | 2 | 0.5 | 1.5 | 0 |
| 9/20/2013 | Fee Litigation | 3.7 | 1 | 2.7 | 2 |
| 9/18/2013 | Fee Litigation | 4.1 | 1 | 3.1 | 1 |
| 10/22/2013 | Fee Litigation | 5.7 | 4 | 1.7 | 2 |
| 1/29/2015 | Fee Litigation | 0.3 | 0 | 0.3 | 0 |
| 2/6/2015 | Fee Litigation | 0.4 | 0 | 0.4 | 0 |
| 1/19/2013 | Paralegal | 5.5 | 0 | 5.5 | 5.5 |
| 7/17/2013 | Unrelated | 3.5 | 0.7 | 2.8 | 0 |
| 9/10/2013 | Unrelated | 0.9 | 0 | 0.9 | 0 |
| 4/9/2013 | Unsuccessful | 4.1 | 0 | 4.1 | 0 |
| 1/23/2015 | Unsuccessful | 13.6 | 0 | 13.6 | 0 |
| | | | **Total** | **138.6** | **10.5** |

*Figure 1*: *Breakdown of Reasonable Hours Billed and Resulting Changes.*

| | Attorney Hours | Paralegal Hours |
|---|---|---|
| **Original Bill** | 357 | 0.2 |
| **Change** | -138.6 | 10.5 |
| **Reasonable Hours** | 218.4 | 10.7 |

*Figure 2*: *Reasonable Attorney and Paralegal Hours*

22